Filed 11/29/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent<br>v.<br><br>KIARRA PRICE,<br><br>        Defendant and Appellant. | A159439<br><br>(Contra Costa County<br>Super. Ct. No. 51103373) |

Appellant Kiarra Price appeals from the trial court's denial of her petition to vacate her 2013 murder conviction and for resentencing under Penal Code section 1170.95.[1]

In 2013, a jury found Price guilty of first degree murder and found true the felony-murder special-circumstance allegation that the murder was committed while Price was participating in a robbery and either (1) was the killer, (2) aided and abetted the murder with the intent to kill, or (3) acted with reckless indifference to human life and was a major participant in the robbery. (See § 190.2.) The trial and verdict pre-dated our Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), which clarified the meaning of "major participant" and "reckless indifference to human life" as used in the third alternative.

---

[1] All section references are to the Penal Code.

On appeal, we affirmed the conviction, holding the jury's special circumstance finding was supported by substantial evidence regarding the first alternative, that Price was the actual killer, and the second, that she intended for Merrill to be killed. (*People v. Price* (2017) 8 Cal.App.5th 409, 451-454 (*Price I*).) We did not determine whether substantial evidence supported a finding under the third alternative, i.e., that Price was a "major participant" in the felony murder acting with "reckless indifference" for human life.

In 2018, the Legislature adopted and the Governor signed into law Senate Bill No. 1437 (2017-2018 Reg. Sess.), which amended the statutory definition of murder in sections 188 and 189 to eliminate murder liability under the natural and probable consequences doctrine and to limit felony-murder liability to cases in which the felony-murder special circumstance was proven. The legislation provided a retroactive resentencing remedy under section 1170.95 for individuals who were convicted of murder prior to the amendment and could not be convicted under the amended murder statutes. The legislation took effect on January 1, 2019.

In 2019, Price filed her section 1170.95 petition seeking to have her murder conviction vacated and to be resentenced on any remaining counts. The district attorney filed opposition. After appointing Price counsel, receiving full briefing and taking judicial notice of Price's record of conviction, the superior court denied the petition, concluding, "the record here establishes the clear viability of a prosecution for felony-murder with a special circumstance." It did not issue an order to show cause or hold an evidentiary hearing. Price now appeals from that ruling.

We affirm. It is not clear which of the three special circumstance alternatives were relied on by the jury. In this circumstance, we conclude—

without deciding whether substantial evidence review of any one possible alternative basis for the special circumstance finding is enough to preclude relief under section 1170.95—that substantial evidence supports each of the three alternatives presented to the jury, including whether Price acted as a "major participant" in the robbery acting with "reckless indifference" to human life. Substantial evidence thus supports each of the three possible bases for the jury's special circumstance finding, and we conclude that under these circumstances Price is not entitled to have her murder conviction vacated and to be resentenced on the remaining charges. We therefore affirm.

## BACKGROUND

### I.

### *The Trial and Verdict*

Our opinion in *Price I* describes in detail the evidence presented against Price at her trial. (*Price I*, *supra,* 8 Cal.App.5th at pp. 416-425.) We will summarize it only briefly here. In substance, it showed that in 2009, Price, then 20 years old, along with two friends, Kendra Fells and Teareney Brown, participated in a robbery of 22-year-old Benjamin Merrill during which one of them shot and killed him. Fells, the owner of the gun used in the killing, entered a plea agreement for a 15-year determinate sentence in exchange for testifying against Price. According to her testimony and other evidence at trial, Price and Brown stopped at the house where Fells stayed with her girlfriend in Pittsburg, California, and awakened Fells, who then showed Price a revolver Fells had recently purchased. Price and Brown then left in a car belonging to a friend and drove to San Francisco.

3

Sometime later[2], they returned to Pittsburg with a very intoxicated Benjamin Merrill in tow and again stopped at Fells's girlfriend Felicia Edosa's house. Price went inside, sporting an iPhone Fells and her girlfriend had not seen her with before, awakened Fells, asked Fells to take a ride with her, and took Fells's gun from a drawer in the bedroom and put it in her jacket. Price and Fells got into the car with Brown, who drove them to a dimly lit park at about 3:00 a.m. A man Fells didn't recognize (but later learned was Merrill) was asleep in the backseat but awakened before they arrived at the park, and he got out of the car to urinate in the bushes. The three women also got out of the car. After Merrill finished urinating, Brown robbed him of his wallet. Price believed he had more to take and said so. Substantial evidence indicated that she pointed the gun at Merrill and, in circumstances that are not altogether clear,[3] shot twice, hitting Merrill in the chest. The three women got back into the car and left in a hurry, leaving Merrill at the park. Neighbors who heard the shots and the sound of car tires screeching found Merrill, who died at the scene. The autopsy showed Merrill died from a shot that went through his chest and out his back. (*Price I, supra,* 8 Cal.App.5th at p. 424.)

---

[2] From the evidence presented at trial, it appears that the entire sequence of events from the time Price arrived at Fell's house the first time and when Price, Brown and Fells returned there after the robbery and shooting was approximately two hours. (*Price I*, *supra*, 8 Cal.App.5th at pp. 417, 421, 423.)

[3] Fells testified that after she heard Price say, "He got more," she saw Price pointing the gun at Merrill and understood Price was robbing him. Shortly after that, as Fells was trying to get into the car, she turned and saw Price on the ground although Merrill was not on top of her. At that point, she did not see where the gun was pointing but heard two shots and saw a flash. After that she did not see Merrill. He did not get back in the car and she later read in the newspaper that he had died.

In the days following the robbery and shooting, Brown changed the service on Merrill's iPhone from one provider to another. The iPhone was used both by Price and by Brown, but Price began using it shortly after the robbery and it contained contact information for Brown and Fells but not for Price.

The morning after the incident, Fells received a call from Price asking if she was okay. (*Price I, supra,* 8 Cal.App.5th at p. 418.) Fells recognized the number as the one from which she and Edosa had received calls on the night of the murder and told Price not to call her on that phone anymore. (*Ibid.*) A week after that, Fells saw Price with the iPhone and told her to get rid of it. In the meantime, Price and Fells had texted each other, with Price still using Merrill's iPhone. (*Ibid.*) In a text exchange after Fells had read in the paper that Merrill died, Fells chastised Price for "do[ing] to [*sic*] [m]uch when it don't need to b did," meaning Price had not needed to shoot Merrill. (*Ibid.* & fn. 4.) Price texted back that "it need it 2 b did regaurdless" and "Jus on how it was done n—a[4] I been doin dis shit I kno wut I was doin." (*Id.* at pp. 418, 419, fn. 4.) Price further texted, "bitch if I wasn't thinking yo dumb ass wild [*sic*] b in jail rite now or dead so beloved [*sic*] me n—a I was thinking." (*Id.* at p. 419, fn. 4.)

In the first few days after the robbery and murder, Brown arranged for the iPhone to be assigned a new phone number and service provider. (*Price I, supra,* 8 Cal.App.5th at pp. 424-425.) Police nonetheless succeeded in tracking the iPhone, which ultimately led to the arrests of Price and Brown.

After police arrested Price and Brown and while they were housed in the same jail, a note or "kite" was intercepted and Price's cellmate reported seeing her writing a note like that one. The content, which included a

---

[4] We decline to spell out the n-word.

5

reference to Brown's daughter, suggested it had been intended for Brown. It outlined a story they needed to stick to and stated that "even if Barney snitch its gone b her word against ours," and "[a]s long as we sayn the same thang we gud!!!" Because they had been "thru fast track so we was on camara," Price was going to say she was "grindn" (selling drugs) in "the TLs" (San Francisco's Tenderloin neighborhood) when someone came to her with a phone and she bought it. "[T]he next morning," they "went 2 go get the shit [phone] unlocked!!" Besides urging Brown to stick to this story, Price advised, "O yea I hope u b rpin up thease letters 2 n they watchn us so we gone have a be coo cuz I dnt wnt them 2 get us on some premadatated shit!!!" (*Price I*, *supra,* 8 Cal.App.5th at p. 425, fn. 7.)

At the conclusion of the trial, the judge instructed the jury on premeditated murder, felony murder, and aiding and abetting and conspiring to commit these offenses. (*Price I*, *supra,* 8 Cal.App.5th at p. 426.) It also instructed the jury on robbery, aiding and abetting robbery, conspiracy to commit robbery, attempted robbery, firearm enhancement allegations and the special circumstance of murder committed in the course of a robbery.

The jury convicted Price of robbery and first degree murder and found a robbery-murder special-circumstance allegation to be true, but it rejected three special allegations as to both robbery and murder: (a) that Price "personally used a firearm," (b) that she "intentionally and personally discharged a firearm" and (c) that she "caused great bodily injury and death to [Merrill]." The court sentenced Price to life without parole as required by the special circumstance statute, Penal Code section 190.2. (*Price I*, *supra,* 8 Cal.App.5th at p. 414.)

6

## II.

### *The Direct Appeal in Price I*

On direct appeal in *Price I*, we addressed, among others, Price's claim that the jury's robbery-murder special-circumstance finding was not supported by substantial evidence.  She made an argument about the insufficiency of the evidence similar to those she raised in her section 1170.95 petition in the superior court, which she reprises on appeal.  As we summarized it, "Price's argument that the evidence here was insufficient focuses solely on section 190.2, subdivision (d), the reckless indifference and major participant requirements that provision imposes for felony[-]murder participants who are not the actual killer and the *Banks* factors that are considered on review of a special circumstance finding for a nonkiller.  She observes that '[t]he jury expressly rejected Fells's testimony appellant shot Merrill' and that '[t]he court defers to the jury's credibility determination.' " (*Price I, supra,* 8 Cal.App.5th at p. 452.)

In responding to Price's arguments challenging the special circumstance finding, we discussed *Banks* and *Clark* at some length.[5] (*Price I, supra,* 8 Cal.App.5th at pp. 447-451.)  Among other things, we concluded that the jury's not true findings regarding the gun-related allegations should not be considered on the separate question of the sufficiency of the evidence on the robbery-murder special circumstance requirements.  (*Id.* at pp. 452-453, citing *People v. Miranda* (2011) 192 Cal.App.4th 398, 405-406 and *People v. Lewis* (2001) 25 Cal.4th 610, 656.)  Under the rule set forth in those cases, " 'Sufficiency-of-the-evidence review

---

[5] Price contended not only that the jury's finding was not supported by substantial evidence but that the instructions to the jury on the special circumstance were erroneous under *Banks* and *Clark*.

involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt. [Citations.] This review should be independent of the jury's determination that evidence on another count was insufficient.' " (*People v. Lewis*, at p. 656.) In *Price I*, we looked at "all of the evidence presented to the jury regarding Price's role in the murder, including evidence indicating Price was the actual shooter" (*Price I,* at pp. 452-453), "actually intended that Merrill would be killed" (*id*. at p. 453) and "played the most prominent role both in planning to rob Merrill and in robbing him and killing him." (*Ibid*.) Given that substantial evidence supported the findings that Price was the actual killer and intended to kill Merrill, we concluded there were "more than sufficient [facts] to support the jury's true finding as to Price on the felony-murder special circumstance." (*Id*. at pp. 452-454.) Because there was sufficient evidence that Price was the killer and that she aided and abetted the felony murder with the intent to kill, we concluded it was unnecessary to decide whether the evidence supported a finding that she acted with reckless indifference within the meaning of *Banks* and *Clark*.[6] (*Price I,* at pp. 453-454 & fn. 22.)

As we will discuss further below, we now conclude that substantial evidence also supported a finding that Price was both a major participant in

---

[6] We stated that the evidence showed Price was a major participant in the felony murder but did not rely on that finding or reach the third alternative basis for a special circumstance finding of major participant and reckless indifference to human life, believing it unnecessary to reach the issue given our ruling on the first and second alternatives. Insofar as they argue we previously decided the major participant *and* reckless indifference issues, the People read too much into our prior opinion. We did not address reckless indifference at all, and our discussion of major participation was abbreviated. (*Price I, supra,* 8 Cal.App.5th at pp. 453-454 & fn. 22.)

the felony murder and acted with reckless indifference for human life, and thus the jury's special circumstance finding is supported under any of the three possible bases on which the jury could have relied.

## III.

### *The Section 1170.95 Proceedings*

In March 2019, Price, representing herself, filed her section 1170.95 petition. The district attorney filed an opposition and the court appointed counsel to represent Price. The judge who presided at Price's trial ruled on the petition in November 2019. (*Price I, supra,* 8 Cal.App.5th at p. 409.)

The court took judicial notice of its file in the case and of our opinion in *Price I*. As we have said, based on our holding in *Price I*, the trial court denied the petition because the record established "the clear viability of a prosecution for felony-murder with a special circumstance."

Price timely appealed from the trial court's denial of her petition.

## DISCUSSION

## I.

### *Legal Background*

### A. The Felony-Murder Special Circumstance and the *Banks* and *Clark* Decisions Interpreting It

The special circumstances statutes that are at the heart of this appeal (and *Price I*)—sections 190.1, 190.2, 190.3 and 190.4—were amended by the voters through the initiative process in 1990 to, among other things, extend death penalty and life without parole sentences to major participants in felony murders who act with reckless indifference for human life. (*Raven v. Deukmejian* (1990) 52 Cal.3d 336, 342, 344-345; see § 190.2.) Section 190.2 provides that a defendant found guilty of first degree murder shall be punished by death or life without the possibility of parole under specified "special circumstances." (§ 190.2, subd (a).) One such circumstance is that

the murder was committed while the defendant was engaged in, was an accomplice in, or was in immediate flight after, the commission or attempted commission of specified felonies, including robbery.  (*Id.*, subd. (a)(17)(A).)  The section further specifies that unless a special circumstance requires it, the actual killer need not have had any intent to kill to be subject to the heightened punishment.  (*Id.*, subd. (b).)  A person other than the actual killer is subject to the heightened punishment if he or she either:  "with the intent to kill aids, abets, counsels, commands, induces, solicits, requests, or assists any actor in the commission of murder in the first degree" (*id.*, subd  (c)), or "with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of" the felony that results in the death."  (*Id.*, subd. (d).)

In 2015 and 2016, our Supreme Court in *Banks* and *Clark* interpreted the "major participant" and "reckless indifference" language in section 190.2 to incorporate standards the United States Supreme Court had adopted under the Eighth Amendment about three decades earlier in *Tison v. Arizona* (1987) 481 U.S. 137 and *Enmund v. Florida* (1982) 458 U.S. 782, establishing the minimum level of culpability necessary to impose the death penalty.  (*Banks*, *supra*, 61 Cal.4th at pp. 798, 805-811; *Clark*, *supra*, 63 Cal.4th at pp. 608-623.)  Our Supreme Court concluded that *Tison* and *Enmund* "represent points on a continuum" of culpability.  (*Banks*, at p. 802.)  The getaway driver in *Enmund*—who was a minor actor in an armed robbery, not present at the scene of the killing and had no intent to kill—represented the extreme lower end of the spectrum, at which the United States Supreme Court found the death penalty constitutionally disproportionate.  The Tison brothers, on the other hand—who aided their murderer father and his

10

cellmate in an armed breakout from prison, smuggled guns into the prison, participated in the capture of a family at gunpoint and the theft of their car and stood by while the others debated whether to, and ultimately did, murder the family—were major participants in the felony and acting with a reckless indifference to human life, justifying imposition of the death sentence. (*Banks*, at pp. 799-800, 802-803.) "Somewhere between them, at conduct less egregious than the Tisons' but more culpable than . . . Enmund's, lies the constitutional minimum" required for imposing a sentence of death and the statutory minimum for imposing either death or life without parole. (*Id.* at p. 802.)

In *Banks* and *Clark*, our high court derived from *Tison, Enmund* and subsequent cases a series of factors helpful in determining whether the "major participation" and "reckless indifference" components of the special circumstances statute, section 190.2, subdivision (d), have been met (*Banks, supra,* 61 Cal.4th at p. 803; *Clark, supra,* 63 Cal.4th at pp. 618-623), which it then applied in reviewing the defendants' substantial evidence challenges to the jury's special circumstance findings. (*Banks*, at pp. 805-811; *Clark*, at pp. 618-623.) *Banks*, like *Enmund*, involved a getaway driver. The driver in *Banks* waited for his confederates three blocks away for 45 minutes and then picked them up and drove them away. (*Banks*, at pp. 804-805.) There was no evidence that he played any role in planning the robbery or procuring the weapons, nor any evidence that his confederates had previously committed violent crimes. (*Id.* at p. 805.) The court held the felony-murder special circumstance was not supported by sufficient evidence. In *Clark*, the court held the special circumstance was not met for an accessory to a robbery who was the "mastermind" of a plan to rob a store in which a gun would be used but who designed the plan to avoid violence. (*Clark*, at pp. 612-613 & n. 72.)

11

The store was to be robbed after closing time when most employees would be gone, employees would be handcuffed in a bathroom away from the scene, and the gun that was to be used to move them to that location was to be unloaded. There was no evidence that defendant had past experience with the shooter, and he was not in the immediate area where his confederate shot the victim. (*Id*. at pp. 612-614, 620-621.) The court did not decide whether the defendant was a major participant, but found insufficient evidence that defendant, having planned the crime to minimize the risk of violence, was aware of an elevated risk to human life beyond that involved in any armed robbery. (*Id*. at pp. 614, 623.)

In the wake of *Banks* and *Clark*, individuals convicted of murder with a felony-murder special circumstance have petitioned the courts for a writ of habeas corpus, arguing the evidence was insufficient to support major participation or reckless indifference as *Banks* and *Clark* defined and limited those requirements. (See *In re Moore* (2021) 68 Cal.App.5th 434, 439 (*Moore*).) In *Moore* and cases it cites, our appellate courts have granted habeas relief, applying the *Banks* and *Clark* factors to vacate special circumstance findings on insufficient evidence grounds.[7] Our high court

_____

[7] *Moore, supra,* 68 Cal.App.5th at p. 450, citing *In re Taylor* (2019) 34 Cal.App.5th 543 (*Taylor*), *In re Ramirez* (2019) 32 Cal.App.5th 384, 404-406 (*Ramirez*), *In re Bennett* (2018) 26 Cal.App.5th 1002, 1018-1027 (*Bennett*), *In re Miller* (2017) 14 Cal.App.5th 960, 966-967, 974-980 (*Miller*); see *Taylor*, at pp. 557-562. Unlike here, the evidence in these cases did not indicate the habeas petitioners were the actual killers or that they aided and abetted the murder with intent to kill. (See *Moore*, at p. 445 & fn. 6 [petitioner not actual killer]; *Taylor*, at p. 551 [petitioner aided and abetted felony but was not actual killer and did not have intent to kill]; *Ramirez*, at pp. 393, 405-406 [petitioner aided and abetted felony but was not actual killer; no evidence he harbored willingness to kill]; *Bennett*, at p. 1008 [petitioner not one of shooters and was tried on theory he was major participant who acted with reckless indifference to human life]; *Miller*, at

reversed a denial of habeas corpus relief in *In re Scoggins* (2020) 9 Cal.5th 667 (*Scoggins*) after concluding the evidence did not support a finding that Scoggins acted with reckless indifference to human life. (*Id.* at pp. 677-684.)[8] The courts in these cases applied substantial evidence review but in doing so carefully analyzed the factors identified in *Banks* and *Clark* and compared the facts in the cases before them with *Enmund* and *Tison* to assess whether the evidence placed the habeas petitioner above the high level of culpability prescribed as the statutory and constitutional minimum for imposing a life without parole or death sentence. (See *Scoggins*, at pp. 677-683; *Taylor*, *supra,* 34 Cal.App.5th at pp. 551-554, 556-561; *Ramirez*, *supra,* 32 Cal.App.5th at pp. 393-408; *Bennett*, *supra,* 26 Cal.App.5th at pp. 1018-1027; *Miller*, *supra,* 14 Cal.App.5th at pp. 966-967, 971, 973, 974-977.)

In other cases, courts have denied habeas corpus petitions after concluding substantial evidence supported the challenged special circumstance finding consistent with the standards of *Banks* and *Clark*. (*E.g.*, *In re Loza* (2021) 10 Cal.App.5th 38, 46-55 [petitioner heard confederate brag about having shot someone in the head, participated in planning convenience store robbery at which confederate killed two employees, held door open to facilitate confederate's escape, handed him gun for use in robbery, was present at scene of robbery and did nothing to prevent shooting or assist victims]; *In re McDowell* (2020) 55 Cal.App.5th 999, 1007-1015 [petitioner instrumental in planning and perpetrating burglary and attempted robbery of drug dealer by surveilling victim's house beforehand,

---

pp. 966-967 [petitioner not present at scene of crime and no evidence he knew lethal force was probable].)

[8] In *Scoggins*, too, the petitioner's confederates, not petitioner, killed the victim and there was no evidence petitioner knew or intended that lethal force would be used. (*Scoggins*, *supra,* 9 Cal.5th at p. 681.)

knocking on victim's door, entering first, brandishing knife to facilitate accomplice's entrance, demanding, " '[W]here is the shit?,' " and failing to restrain accomplice or intervene after accomplice fired warning shot before shooting victim].)

## B. The Revised Law of Murder Under Senate Bill No. 1437 (2017-2018 Reg. Sess.) and Petition Proceedings Under Section 1170.95

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the felony[-]murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)" (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).) "To further that purpose, Senate Bill 1437 added three separate provisions to the Penal Code. First, to amend the felony-murder rule, Senate Bill 1437 added section 189, subdivision (e): 'A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' " (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).)

In effect, Senate Bill No. 1437 (2017-2018 Reg. Sess.) limited felony-murder liability to murders that fall within the felony-murder special-circumstances provisions of section 190.2. It also eliminated natural and

probable consequences murder liability altogether. (*Gentile*, *supra*, 10 Cal.5th at pp. 842-843.) And it "added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*Lewis*, *supra*, 11 Cal.5th at p. 959.)

As we explained in *People v. Anthony* (2019) 32 Cal.App.5th 1102, " 'An offender may file a petition under section 1170.95 where all three of the following conditions are met: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." ' " (*Id.* at p. 1148; § 1170.95, subd. (a)(1)–(3).)

"Where the petition complies with subdivision (b)'s three requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief. (§ 1170.95, subd. (c).)" (*Lewis*, *supra*, 11 Cal.5th at p. 960.) "If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' (§ 1170.95, subd. (d)(1).) 'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' (§ 1170.95, subd. (d)(3).) At the hearing stage, 'the burden of proof shall be on the

15

prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' (§ 1170.95, subd. (d)(3).)" (*Ibid.*)

As we noted recently in *People v. Duchine* (2021) 60 Cal.App.5th 798, "Since [Senate Bill No.] 1437 [(2017-2018 Reg. Sess.)] was adopted and its mechanism for retroactive application has come into play through the filing of section 1170.95 petitions, many questions have arisen about that process and percolated up through appeals from resentencing decisions." (*Id.* at p. 811, fns. omitted.) Many of the questions have now reached our high court. (See, e.g., *Gentile, supra,* 10 Cal.5th 830, 843-851, 853-859 [Sen. Bill No. 1437 (2017-2018 Reg. Sess.) bars conviction for second degree murder under natural and probable consequences theory; § 1170.95 provides exclusive avenue for retroactive relief under Sen. Bill No. 1437 (2017-2018 Reg. Sess.)]; *Lewis*, *supra*, 11 Cal.5th at pp. 962-963, 972 [§ 1170.95 entitles petitioner to counsel on request after filing facially sufficient petition, requires single prima facie showing and allows parties and trial court to use record of conviction in assessing whether the petitioner has made a prima facie case].)

## II.

### *The Parties' Arguments on Appeal*

Price contends her petition asserted an accusatory instrument was filed against her which allowed the prosecution to proceed under the theories of felony murder or murder under the natural and probable consequences doctrine, that she was convicted under one of those theories and that she could not now be convicted of murder because of changes made to the murder statutes in Senate Bill No. 1437 (2017-2018 Reg. Sess.). Having thus "complied with all of the statutory requirements," she argues, she was entitled to have the trial court conduct an evidentiary hearing. Relatedly, she contends the trial court was required to assume her allegations as true in

16

determining whether she had established a prima facie case. In so arguing, Price implies we must ignore the elephant in the room, namely, the jury's special circumstance finding.

These arguments are foreclosed by *Lewis*, in which our Supreme Court held that "the parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief under [section 1170.95,] subdivision (c)." (*Lewis*, *supra*, 11 Cal.5th at p. 972.) The record of conviction, the court reasoned, "will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Id.* at p. 971.) The *Lewis* court expressed the caveat that the trial court generally should " ' "take[] petitioner's factual allegations as true," ' " make " ' "a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved" ' " and refrain from rejecting those factual allegations " 'on credibility grounds without first conducting an evidentiary hearing.' " (*Ibid.*) But this prescription was limited by the following holding: " '[I]f the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition" then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid.*)

Price's assertion in her petition that she "**could not** be convicted <u>NOW</u> of first-degree murder because of changes to Section[s] 188 or 189 made effective January 1, 2019" was challenged by the People, who pointed out that the jury had "found true the special circumstance that the murder was committed while she was participating in the robbery of Merrill" and "was sentenced to life without parole pursuant to Penal Code section 190.2."

Based on that finding, the People argued, "Not only *could* she be convicted as the law currently defines murder, she *was*."

Under *Lewis*, the trial court was not required to accept as true Price's allegation that she could not be convicted of murder under the current statutes. It was entitled to consider the record of conviction in deciding whether she established a prima facie case and was not required to hold an evidentiary hearing before doing so. Thus, insofar as Price argues the trial court erred in not accepting her allegation that she could not be convicted under current law without considering the record of conviction, she is wrong.

That said, *Lewis* did not address whether a jury's special circumstance finding, with or without an affirmance of that finding on direct appeal, can be challenged under section 1170.95 and, if so, what relief is available under that section to a party asserting such a challenge. These questions are at the heart of Price's appeal and we must resolve them without guidance from the California Supreme Court. Implicated in our analysis of these questions are several of Price's other arguments, including that (notwithstanding the jury's special circumstance finding and our holding that the finding was supported by substantial evidence) she was entitled to an evidentiary hearing at which the prosecution would have been required to prove a legally valid theory of murder that it would not have been able to prove because the record shows she was not the actual killer, had no intent to kill, was not a major participant and did not act with reckless indifference to human life.

The People likewise make a few assertions that are foreclosed by *Lewis*, such as that there is a two-step process for determining whether the plaintiff has made out a prima facie case and that counsel need not be appointed until the second step. (See *Lewis*, *supra*, 11 Cal.5th at pp. 962-963.) Those assertions are of little or no consequence here because the trial court

appointed counsel at the outset and allowed full briefing in this case before determining Price had not established a prima facie case. Price argues that the court denied her petition prematurely not because it engaged in a one-step or two-step process in evaluating whether she established a prima facie case, but because it considered the record of conviction in doing so and erred in concluding she had not met her burden.

Of greater significance is the People's argument that because we already held there was sufficient evidence to support the special circumstance finding on direct appeal, and did so after *Banks* and *Clark* had been decided, Price cannot challenge the special circumstance finding and is categorically barred from relief under section 1170.95. The People also argue that a special circumstance finding is valid until overturned under *Banks* and *Clark* and that this must be accomplished by way of a petition for habeas corpus. Only if the jury rejects a special circumstance finding or a court reverses such a finding when reviewing it under *Banks* and *Clark*, the People posit, may a party convicted of murder with such a finding seek relief under section 1170.95.

In her reply, Price urges us, if we agree with the People's procedural argument that she must first challenge the special circumstance finding through a petition for habeas corpus, to treat her appeal as a petition for habeas corpus. She further argues, as she did on direct appeal, that the jury did not find she was the actual killer, as evidenced by its rejection of the firearm allegations. Price also argues that the People are wrong in suggesting the special circumstance finding bars relief under section 1170.95 as a matter of law, contends the record contains scant evidence that she was a major participant or acted with reckless indifference to human life and further argues that the trial court should have ordered a hearing where the

19

People would have the burden to prove her ineligibility for sentencing beyond a reasonable doubt.

At bottom, the contest between Price and the People rises or falls less on matters of procedure and more on the merits of her petition. As we view it, Price's appeal turns on three questions: (1) Does section 1170.95 permit Price to challenge the jury's special circumstance finding? (2) If so, is she entitled to an evidentiary hearing at which the People will be required to prove the facts underlying that finding anew and she and the People may present new evidence? (3) Does our ruling on direct appeal that substantial evidence supported two of the three possible factual bases for the special circumstance finding bar Price from challenging that finding? The key to answering these questions lies in the intersection between *Banks*, *Clark* and the special circumstance legislation those cases interpreted, on the one hand, and Senate Bill No. 1437 (2017-2018 Reg. Sess.) and the legislative intent behind it on the other. It is to these issues we now turn.

## III.

### *Analysis*

#### A. Senate Bill No. 1437 (2017-2018 Reg. Sess.) Did Not Alter the Standard of Review for Special Circumstance Findings.

Currently pending in the California Supreme Court is the question whether a felony-murder special-circumstance finding made before *Banks* and *Clark* categorically precludes a petitioner from making a prima facie showing of eligibility for relief under section 1170.95 as a matter of law. (*People v. Strong*, rev. granted Mar. 10, 2021, S266606). On this question, our appellate courts have been deeply divided. (See *People v. Pineda* (2021) 66 Cal.App.5th 792, 799-801 (*Pineda*) [discussing conflicting cases], rev. granted Sept. 29, 2021, S270513; *People v. Harris* (2021) 60 Cal.App.5th 939, 954-958 [same], rev. granted Apr. 28, 2021, S267802.) Assuming a special

20

circumstance finding made before *Banks* and *Clark* does not categorically bar such relief, a related question is what type of review applies in section 1170.95 proceedings to claims of error concerning such findings. Appellate courts have disagreed on the latter issue as well.

Some courts have held that a petitioner with a pre-*Banks* and *Clark* special circumstance finding is not categorically barred from seeking relief under section 1170.95 and is entitled to factfinding following an evidentiary hearing.[9] These courts reason that *Banks* and *Clark* "construed the meanings of 'major participant' and 'reckless indifference to human life' 'in a significantly different, and narrower manner than courts had previously.' " (*Smith*, *supra,* 49 Cal.App.5th at p. 93, rev. gr.) According to these cases, "the jury did not have the same questions before them" in cases decided prior to *Banks* and *Clark* as in cases decided after them. (*Smith*, at p. 93.) Price relies on this *Smith* line of cases and argues the trial court erred by failing to issue an order to show cause and provide her an evidentiary hearing, in effect, to relitigate the special circumstance issue.

Other courts have held that a special circumstance finding, including one made prior to *Banks* and *Clark*, categorically bars relief under section 1170.95 unless and until the petitioner first obtains a ruling, on direct appeal or habeas corpus review, that the special circumstance finding is not

---

[9] E.g., *People v. Smith* (2020) 49 Cal.App.5th 85, 95, rev. granted July 22, 2020, S262835; *People v. York* (2020) 54 Cal.App.5th 250, 258-261, rev. granted Nov. 18, 2020, S264954; *People v. Torres* (2020) 46 Cal.App.5th 1168, rev. granted June 24, 2020, S262011. See also *People v. Harris, supra,* 60 Cal.App.5th at pp. 959-960 (pre-*Banks* and *Clark* true finding on felony-murder special circumstance did not render petitioner ineligible as matter of law; where some *Banks* and *Clark* factors were disputed and not clearly resolved by jury, evidentiary hearing was required), rev. gr.

supported by substantial evidence under the *Banks/Clark* standard.[10]  These cases reason that "*Banks* and *Clark* did not create a new rule of law, but rather 'clarified' the already-existing meaning of the phrases 'major participant' and 'reckless indifference to human life' for purposes of special circumstance allegations under section 190.2, subdivision (d)." (*Jones*, *supra*, 56 Cal.App.5th at p. 482, rev. gr.; see also *Nunez*, *supra,* 57 Cal.App.5th at p. 92, rev. gr.)  " 'Where a decision clarifies the kind of conduct proscribed by a statute, a defendant whose conviction became final before that decision' is entitled to postconviction, habeas relief if 'the undisputed facts' in the trial record demonstrate their conduct ' "was not prohibited by the statute" as construed in the decision.' " (*Jones,* at p. 482, citing *Scoggins, supra*, 9 Cal.5th at p. 673.)  In these courts' view, an attack on a special circumstance finding after a conviction becomes final is a collateral attack on the judgment that must proceed by habeas corpus.  Thus, only after successful challenge to the finding on direct appeal or by habeas petition may an individual seek relief under section 1170.95.[11]

 *Galvan* also reasoned that eligibility for relief under section 1170.95 requires the petitioner to "show he or she 'could not be convicted of first or

---

[10]  *People v. Gomez* (2020) 52 Cal.App.5th 1, 16-17 (*Gomez*), rev. granted Oct. 14, 2020, S264033; *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1142-1143 (*Galvan*), rev. granted Oct. 14, 2020, S264284; *People v. Allison* (2020) 55 Cal.App.5th 449, 457-461 (*Allison*); *People v. Jones* (2020) 56 Cal.App.5th 474, 479 (*Jones*), rev. granted Jan. 27, 2021, S265854; *People v. Nunez* (2020) 57 Cal.App.5th 78, 90-96 (*Nunez*), rev. granted Jan. 13, 2021, S265918; *People v. Simmons* (2021) 65 Cal.App.5th 739, 749-750 (*Simmons*), rev. granted Sept. 1, 2021, S270048; see also *People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 419-420.

[11]  *Gomez, supra*, 52 Cal.App.5th at p. 17, rev. gr.; *Galvan, supra*, 52 Cal.App.5th at p. 1142, rev. gr.; *Simmons, supra*, 65 Cal.App.5th at pp. 748, 749, rev. gr.; see also *Allison, supra*, 55 Cal.App.5th at p. 459 & fn. 9.

second degree murder because of changes to Section[s] 188 or 189 made effective' as part of Senate Bill No. 1437 [(2017-2018 Reg. Sess.)]." (*Galvan*, *supra*, 52 Cal.App.5th at p. 1142, rev. gr.)  The changes to the special circumstances standard occurred, the *Galvan* court opined, "not 'because of changes' made by Senate Bill No. 1437 [(2017-2018 Reg. Sess.)], but because of the clarification of the requirements for the special circumstance finding in *Banks* and *Clark*." (*Ibid*.)  *Gomez* construed a section 1170.95 petition challenging a pre-*Banks* and *Clark* special circumstance finding as " 'in effect a challenge to the sufficiency of the evidence,' " and expressed concern that if such an issue could be raised in a section 1170.95 petition the petitioner would attain a remedy beyond his or her "due process right to challenge the sufficiency of the evidence," i.e., "a new trial, at which the prosecution would bear the burden of proving matters that may not have been seen as relevant at the original trial more than a decade earlier."[12] (*Galvan*, at p. 1142, citing *Gomez*, *supra*, 52 Cal.App.5th at pp. 15, 17, rev. gr.)

The People rely on this *Gomez/Galvan* line of cases and argue that the forum for addressing a challenge to a pre-*Banks* and *Clark* special circumstance finding is "through an appeal or on habeas corpus, rather than a section 1170.95 petition."  Since this court already rejected a challenge to the special circumstance finding against Price on direct appeal, the People contend she has already been provided the review that *Banks* and *Clark* prescribe.

Still other courts, including our colleagues in Division Four, have held that "where a petitioner facing a felony-murder special-circumstance finding

---

[12] The "new trial" to which *Galvan* was referring is the evidentiary hearing before a judge provided under section 1170.95, subdivision (d).  (See *Galvan*, *supra*, 52 Cal.App.5th at p. 1142, rev. gr.)

23

has never been afforded a *Banks*/*Clark* sufficiency-of-the-evidence review by any court, [either] at the trial or appellate level," he or she may seek resentencing under section 1170.95, but the resentencing court should undertake a sufficiency-of-the-evidence analysis "at the prima facie entitlement-to-relief stage of a resentencing proceeding under subdivision (c) of [section 1170.95]." (E.g., *People v. Secrease* (2021) 63 Cal.App.5th 231, 255 (*Secrease*), rev. granted June 30, 2021, S268862.)[13]  Only if the resentencing court first determines the record of conviction does not contain substantial evidence to support the finding under *Banks* and *Clark* is the petitioner entitled to an order to show cause and an evidentiary hearing.  (*Secrease*, at p. 236; *Pineda, supra,* 66 Cal.App.5th at pp. 801-802, rev. gr.; *Arias, supra,* 66 Cal.App.5th at p. 1004, rev. gr.)  If the resentencing court concludes sufficient evidence in the trial record "meets the minimum threshold of personal culpability set by *Banks* and *Clark*," the felony-murder special circumstance finding will "foreclose resentencing as a matter of law." (*Secrease*, at p. 261.)

The *Secrease* and *Gomez* lines of cases agree that "section 1170.95, subdivision (c) cannot reasonably be read to permit a 'do-over' of factual issues that were necessarily resolved against a section 1170.95 petitioner by a jury." (*Secrease, supra,* 63 Cal.App.5th at pp. 254-255, rev. gr., citing *Allison* and *Jones*.)  Both lines of cases hold that *Banks* and *Clark* require substantial evidence review of a previous special circumstance finding made under section 190.2 before an individual can seek relief under section 1170.95.  They disagree primarily on whether that review must be

---

[13]  See *Pineda, supra,* 66 Cal.App.5th at pp. 801-802 [same], rev. gr.; *People v. Arias* (2021) 66 Cal.App.5th 987, 1004 (*Arias*), rev. granted Sept. 29, 2021, S270555 [same].

performed by an appellate court via habeas corpus or direct appeal or may be accomplished by a trial court considering a section 1170.95 resentencing petition.[14] The *Smith* line of cases, on the other hand, interprets Senate Bill No. 1437 (2017-2018 Reg. Sess.) as affording a new and different remedy to petitioners raising such a challenge, an evidentiary hearing under section 1170.95, subdivision (d), at which the parties may submit additional evidence and the People bear the burden of proof to show beyond a reasonable doubt that the petitioner is ineligible for resentencing, meaning that he meets one of the three criteria for murder stated in section 189, subdivision (e), which are the same as the special circumstances outlined in section 190.2.

Putting aside the question of the proper forum for raising and resolving such challenges,[15] we believe the *Secrease* and *Gomez* lines of cases have the better argument regarding the nature of the review that applies to a challenged special circumstance finding made prior to *Banks* and *Clark*. As stated in *Nunez, supra,* 57 Cal.App.5th at p. 96, review granted, "Senate Bill No. 1437 did not change any of the requirements for the special circumstance

---

[14] As we have indicated, the *Secrease* case would allow the prosecution to re-try the special circumstance issue after a determination that there is insufficient evidence in the record to support it. By relegating petitioners challenging a special circumstance finding to direct appeal or habeas corpus review, the *Gomez* line of cases apparently would not provide for a re-do by the prosecution, since in habeas cases the courts have reversed insufficiently supported special circumstance findings without allowing for retrial.

[15] In *People v. Law* (2020) 48 Cal.App.5th 811, 821-826, review granted July 8, 2020, S262490, the court bypassed the proper forum question by holding that the trial court's erroneous decision that a pre-*Banks* and *Clark* special circumstance finding was a categorical bar to resentencing was harmless because substantial evidence supported the jury's special circumstance finding under *Banks* and *Clark*.

25

finding announced in *Banks* and *Clark*." The remedy the *Banks* and *Clark*
decisions provide for special circumstance findings is not an evidentiary
hearing but a form of substantial evidence review.

Senate Bill No. 1437 (2017-2018 Reg. Sess.) incorporated the special
circumstance finding under section 190.2 into the murder statutes and
thereby increased the culpability required for a conviction under the felony-
murder doctrine. But in doing so, the Legislature did not change the
substance of the special circumstances stated in that statute in any way.[16]
*Banks* and *Clark* were decided prior to the enactment of Senate Bill No. 1437
(2017-2018 Reg. Sess.), and we presume the Legislature was aware of our
high court's clarification of the major participant/reckless indifference
alternative for a special circumstance finding under section 190.2 and

---

[16] Prior to enactment of Senate Bill No. 1437 (2017-2018 Reg. Sess.),
section 189 provided that murders committed "in the perpetration of" certain
felonies, including "robbery" are murder of the first degree (former § 189,
subd. (a).) Senate Bill No. 1437 (2017-2018 Reg. Sess.) added the proviso that
"[a] participant in the perpetration or attempted perpetration of a felony
listed in subdivision (a) in which a death occurs is liable for murder only if
one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2)
The person was not the actual killer, but, with the intent to kill, aided,
abetted, counseled, commanded, induced, solicited, requested, or assisted the
actual killer in the commission of murder in the first degree. [¶] (3) The
person was a major participant in the underlying felony and acted with
reckless indifference to human life, as described in subdivision (d) of
Section 190.2." (Stats. 2018, ch. 1015, § 3.) This addition incorporated the
elements of the felony-murder special circumstance into the murder statute.
(Compare *ibid.* with § 190.2, subds. (a)(17)(A) [felony-murder special
circumstance], (b) [actual killer need not have had intent to kill], (c) [person
not actual killer who, with intent to kill, aided, abetted, counseled,
commanded, induced, solicited, requested, or assisted actor committing first
degree murder] & (d) [person not actual killer who, with reckless indifference
to human life and as major participant, aided, abetted, counseled,
commanded, induced, solicited, requested, or assisted in commission of felony
that resulted in death].)

26

intended to incorporate the high court's holdings, along with section 190.2 itself, into the murder statutes.[17] (*In re Greg F.* (2012) 55 Cal.4th 393, 407.) We also presume that the Legislature understood that the remedy afforded by *Banks* and *Clark* for special circumstance error is substantial evidence review of the record to determine whether the finding is supported by evidence sufficient to show the minimum level of culpability those cases (and *Tison* and *Enmund*) require. The Legislature's incorporation by reference of the substance of section 190.2's special circumstances, *without change*, into the murder statute reflects its intent that the *Banks*/*Clark* interpretation of the special circumstance terms would govern both liability for felony murder *and* eligibility for a sentence of death or life without parole. (See *Banks, supra,* 61 Cal.4th at p. 804 [§ 190.2 as interpreted governs eligibility for sentences of death and life without parole].) The Legislature's failure explicitly to expand the remedy afforded by those cases beyond review for substantial evidence supporting the minimum levels of culpability those cases required implies it did not intend to provide a new or different remedy for a claim of *Banks/Clark* error. (See *Greg F.,* at p. 407 [failure of Legislature to change law in particular respect when subject is before it while making changes in other respects indicates intent to leave law as it stands in respects not amended].)

Nor do we construe the evidentiary hearing provision of section 1170.95, subdivision (d) to mean a petitioner is entitled to a new (albeit non-jury) trial to relitigate factual matters, such as a special circumstance finding, that were already determined by a jury. As we have

---

[17] Indeed, the presumption arguably is not necessary since the legislative history of the bill shows the Legislature was in fact aware of the *Banks* and *Clark* decisions when it adopted Senate Bill No. 1437 (2017-2018 Reg. Sess.). (*Secrease,* 63 Cal.App.5th at pp. 258-259 & fn. 20, rev. gr.)

explained, section 1170.95, subdivision (d) entitles a petitioner who has made a prima facie case that she falls within the provisions of the section, including by showing she was convicted of murder in a case in which the prosecution proceeded under a now-invalid murder theory (*id.*, subd. (a)(1) & (a)(2)), to an evidentiary hearing at which the parties may litigate facts relevant to other, still valid murder theories that the jury did not necessarily previously decide. To prove (or refute) such a theory, the parties may present new evidence, and the People bear the burden of proof beyond a reasonable doubt. (*Id.*, subd. (d)(3).)

The evidentiary hearing does not mean the Legislature intended to allow the parties to reopen and retry matters of fact that the jury already resolved. Indeed, subdivision (d)(2) suggests the Legislature had no such intent. It provides in relevant part that, "[i]f there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner." Thus, the People do not get a do-over where the jury has rejected a special circumstance allegation. And while it is true that the statute does not state the opposite, i.e., that where there was a prior finding by a court or jury that the petitioner *did* act with reckless indifference to human life and *was* a major participant in the felony, the court shall *not* vacate the conviction, that does not mean the Legislature intended to allow the petitioner to relitigate those or other facts already decided against her by a jury. We find it more likely that the Legislature did not include such a categorical assertion because it did not intend to deny petitioners with special circumstance findings the right to pursue the *substantial evidence review Banks* and *Clark* already afford them.

28

(See § 1170.95, subd. (f) ["This section does not diminish or abrogate any rights or remedies otherwise available to the petitioner"].)

In short, the most plausible understanding of section 1170.95, subdivision (d) is not that it permits either party to retry factual determinations actually and necessarily made by the jury at the petitioner's trial. Rather, we agree with Justice Menetrez's observation in a recent concurring opinion that "[t]he purpose of section 1170.95 is to give the defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved." (*Jones*, *supra*, 56 Cal.App.5th at pp. 490-491 [conc. opn. of Menetrez, J.], rev. gr.)[18] As our Division Three colleagues stated in *People v. Daniel* (2020) 57 Cal.App.5th 666, 678, review granted February 24, 2021, S266336, in an analogous context, "We cannot agree that section 1170.95 authorizes a defendant to present new evidence to undermine a jury's finding of guilt under a particular theory of murder, effectively retrying the case."

We disagree with cases like *Smith* that posit that relitigation of special circumstance findings should be permitted under section 1170.95 because "the jury did not have the same questions before them" in cases decided prior

---

[18] We express no view whether *Secrease* is correct in holding subdivision (d) provides the People with a do-over on the special circumstance finding if a court concludes substantial evidence does not support the finding under the standards set in *Banks* and *Clark*. We note that successful habeas challenges to special circumstance findings have resulted in such findings being vacated. (See *Scoggins*, *supra*, 9 Cal.5th at p. 684; *Taylor*, *supra*, 34 Cal.App.5th at p. 563; *Ramirez, supra*, 32 Cal.App.5th at p. 408; *Bennett*, *supra*, 26 Cal.App.5th at p. 1027; *Miller*, *supra*, 14 Cal.App.5th at p. 980.) None of those cases addressed the effect of their rulings on the underlying murder conviction in the wake of Senate Bill No. 1437 (2017-2018 Reg. Sess.).

to *Banks* and *Clark* as in cases decided after them. (*Smith, supra,*
49 Cal.App.5th at p. 93.) There is no indication the questions put to the *jury*
have changed as a result of *Banks* and *Clark.* "[O]ur Supreme Court has not
required that juries be instructed on the clarifications, and in the wake of
*Banks* and *Clark*, no mandatory language or material changes were made to
the CALCRIM special circumstance instructions. [Citations.] Rather, while
CALCRIM No. 703 now includes *optional* language drawn from *Banks* and
*Clark*, regarding the factors a jury *may consider*, '[t]he bench notes to the
instruction state that *Banks* "stopped short of holding that the court has a
sua sponte duty to instruct on those factors," and *Clark* "did not hold that the
court has a sua sponte duty to instruct on those factors." ' " (*Nunez,*
57 Cal.App.5th at pp. 92-93, rev. gr.) In *Price I*, we held that neither *Banks*
nor *Clark* "compels a more explicit jury instruction on particular factors or
facts that must be proven" to establish the high degree of culpability they
require. (*Price I, supra*, 8 Cal.App.5th at p. 451; see also *Secrease, supra,*
63 Cal.App.5th at p. 256 [problem with pre-*Banks* and *Clark* special
circumstance finding was not inadequate jury instruction but need for
judicial review of finding under *Banks* and *Clark* standards.], rev. gr.)

We do not disagree with the cases observing that the clarifying
interpretations of the special circumstance language contained in *Banks* and
*Clark* are significant. Indeed, as we said in *Price I*, "[t]he decisions in *Banks*
and *Clark* indicate the felony-murder special circumstance may not lightly be
applied to every participant in a felony murder and that the evidence
required to meet the major participant and reckless indifference elements in
the case of a nonkiller must reflect a high degree of culpability." (*Price I,
supra*, 8 Cal.App.5th at p. 451.) But in our view, *Banks* and *Clark* require
that these clarifying interpretations be applied by the reviewing court rather

30

than the factfinder. In other words, *Banks* and *Clark* require a substantial evidence standard of review, a legal determination requiring an appellate court to view the evidence in the light most favorable to the prosecution, to presume all facts that can reasonably be deduced from the evidence and to determine if a rational trier of fact could have found the elements (as interpreted in *Banks* and *Clark*) beyond a reasonable doubt. (*Banks*, *supra*, 61 Cal.4th at p. 804; *Clark*, *supra*, 63 Cal.4th at p. 610.)

*Banks* and *Clark* (and later cases applying them) also compared the role of the defendants in the cases before them to the roles of Enmund, and the Tison brothers, to determine whether the defendants fell sufficiently high on the culpability spectrum to merit sentences of life without parole or death. (*Banks, supra,* 61 Cal.4th at pp. 805-807; *Clark, supra,* 63 Cal.4th at pp. 618-620, 621, 623.) *Banks*, *Clark* and their progeny have engaged in a *legal analysis* review of the record to determine the sufficiency of the evidence and a determination whether the facts establish a legally prescribed minimum level of culpability; none has engaged in a new factual determination. (See *Ramirez*, *supra*, 32 Cal.App.5th at p. 408 [claim of *Banks/Clark* error "does not involve retrying issues of fact, but rather the application of law to established facts"]; *Miller*, *supra*, 14 Cal.App.5th at p. 980 [claim of *Banks/Clark* error "does not require resolution of disputed facts; the facts are a given, they are just legally insufficient under section 190.2 as elucidated in *Banks* and *Clark*"].) To be sure, the inquiry regarding culpability is fact-specific. Nonetheless, the facts are fixed. They are defined by the evidence in the trial record and the inferences that reasonably can be drawn from them, construed in the light most favorable to the People. The reviewing court does not reweigh the evidence or determine credibility anew.

31

For all of these reasons, we conclude that section 1170.95 does not provide petitioners challenging a special circumstance finding with review greater in scope than that provided by *Banks* and *Clark*. The Legislature understood when it enacted section 1170.95 that the review afforded to such a challenge is a judicial determination regarding whether substantial evidence supports the special circumstance finding, as interpreted in *Banks* and *Clark*. Nothing in section 1170.95 evinces an intent to expand that pre-existing remedy.

We need not decide whether *Banks/Clark* review must be accomplished by a direct appeal or a habeas petition or may instead be raised and decided at the prima facie stage of a section 1170.95 petition in the trial court as our colleagues held in *Secrease*. That is because we agree with the Fourth District's holding in *People v. Law, supra,* 48 Cal.App.5th at p. 822, review granted, that "[w]hether there is sufficient evidence that [an individual] was a major participant in [a] robbery who acted with reckless indifference to human life is a question we can decide on appeal."

## B. Substantial Evidence Supports the Jury's Special Circumstance Findings, and Price Is Thus Ineligible for Resentencing.

As we have explained, on direct review of the judgment against Price, we rejected her claim that the evidence was insufficient to support the jury's special circumstance findings under section 190.2. While we concluded that the evidence supported a finding under the first felony-murder special circumstance in section 190.2, that Price was the actual killer, and under the second, that she acted with intent to kill, we concluded it was unnecessary for us to address the sufficiency of the evidence to support a finding under the third version of the special circumstance, the one addressed in *Banks* and *Clark*. It cannot be discerned from the record which of those three

32

alternatives the jury found true in finding the special circumstance was met. Price claims it cannot have been that she was the actual killer because the jury found not true the allegation that in the commission of the murder she intentionally and personally discharged a firearm, causing great bodily injury or death to Merrill. As we have discussed, we rejected the similar argument she made on direct appeal that the firearm finding demonstrates there is no substantial evidence that she was the actual shooter based on the rule that substantial evidence review of one count " ' " 'should be independent of the jury's determination that evidence on another count was insufficient.' " ' " (*Price I*, *supra,* 8 Cal.App.5th at p. 452.)

Having again reviewed *Banks* and *Clark* and the cases applying substantial evidence review to special circumstance findings in the wake of those decisions, we are less certain that the general rule that substantial evidence is considered for each charge or enhancement in isolation should be applied to substantial evidence review of special circumstance findings. The substantial evidence review applied to such findings has been more searching than that applied in other contexts, entailing an independent look at the factors *Banks* and *Clark* identified as important and what the evidence shows regarding those factors. This review also has entailed a comparison of the defendant's culpability, as reflected by those factors, with the culpability found sufficient or insufficient in *Banks*, *Clark*, *Enmund* and *Tison*.

*Secrease* implies that the view-each-charge-in-isolation rule does not apply in this context. There, the court observed that the "not true finding on the weapons use allegations" against Secrease "suggest[ed] the prosecution failed to prove that Secrease was the actual killer" and the court therefore was not confident his "denial he was the actual killer or that he acted with intent to kill [was] irrefutably rebutted by the felony-murder special-

33

circumstance finding." (*Secrease, supra,* 63 Cal.App.5th at pp. 261, 262, rev. gr.) The court remanded the case to the trial court for resumption of the section 1170.95 proceedings at the "subdivision (c) entitlement-to-relief stage of the process," to determine, "without resolving conflicts in the evidence," "whether the evidence presented at trial was sufficient to support the felony-murder special-circumstance finding under *Banks* and *Clark*" and thus "foreclose[d] [Secrease] from further litigating that issue" and "render[ed] him ineligible for resentencing relief as a matter of law." (*Secrease, supra,* 63 Cal.App.5th at p. 264.)

Also, in *People v. Gonzalez* (2018) 5 Cal.5th 186 (*Gonzalez*), our high court considered whether a special circumstance finding made under section 190.2 demonstrated that a trial court's erroneous failure to instruct on lesser included murder offenses was harmless, and the court concluded that it did. (*Gonzalez,* at p. 191.) The court did not address the sufficiency of the evidence to support the special circumstance finding under *Banks* and *Clark.* But in addressing the defendant's argument that the special circumstance finding was "unreliable" because the jury had found untrue the allegations that a principal was armed and that the defendant personally and intentionally discharged a firearm, the court noted the rule that "[w]here a jury's findings are irreconcilable, we normally attribute such tensions to compromise, lenity or mistake, and give effect to all of the jury's findings" but did not apply it. (*Gonzalez,* at pp. 207-208.) Instead, the court concluded the special circumstance and firearm findings in that case could be reconciled, positing that "the jury could have concluded Gonzalez was not armed and still found defendants had knowledge of a 'grave risk of death.' " (*Id.* at p. 207.) The dissent found the "reconciliation" of the two was beyond a stretch. (See *id.* at pp. 213-214 (dis. opn. of Liu, J., joined by Kruger, J.)

34

["But what are we to make of the jury's 'not true' finding on the allegation that 'one of the principals was armed with a firearm in the commission of [the] crime? How is it possible that the jury believed *both* (1) that [the defendants] engaged in criminal activity that they knew involved a grave risk of death, *and* (2) that none of them was armed with a firearm in the commission of the crime?"].) The dissenters also found the majority's treatment of the special circumstance finding as confirmation of the validity of the felony-murder verdict, while "chalk[ing] [the jury's firearm-related findings] up to compromise, lenity or mistake," inconsistent and would have held the firearm findings established a reasonable probability that a jury instructed on lesser included offenses and related defenses would have decided the case more favorably to the defense. (*Ibid.*)

The *Gonzalez* and *Secrease* opinions' treatment of firearm findings in the context of special circumstance findings, coupled with the jury's rejection of similar firearm enhancements in this case, cause us to doubt that we should rely on the evidence showing Price was the actual killer in affirming the denial of her petition.[19] Specifically, the jury rejected findings that she used or discharged a weapon or caused serious bodily injury or death to Merrill; if we do not ignore those findings they cast doubt that the jury found Price was the actual killer. We have less concern about the evidence of intent to kill, which is not in tension with any of the jury's findings. Even so, it is not clear which alternative the jury actually found true,[20] and we are

---

[19] Indeed, the jury's not true finding that Price personally used a gun suggests it may not have found that she brandished a gun at Merrill, since the instructions indicated that "display[ing] the firearm in a menacing manner during the commission of the offense" constituted personal use.

[20] Here, the pre-*Banks/Clark* jury found the special circumstance to be true but the verdict form did not require it to specify which of the three alternatives it relied on. Thus, we do not know whether it concluded Price

35

reluctant to rely on any one alternative to support the special circumstance finding when we can avoid any doubt as to the validity of the finding by completing the circle we began in *Price I*. We will determine whether, even assuming the jury did not find Price was the actual killer or that she intended that Merrill would be killed, its special circumstance finding is valid based on any of the three alternative bases on which the jury may have relied. We will thus review the third alternative basis for the jury's finding, the one we did not reach on direct appeal: that Price was a major participant in the felony murder and acted with reckless indifference of a grave risk to human life. If substantial evidence supports those findings and Price's conduct and mental state meet the minimum culpability requirements established in *Banks* and *Clark*, the special circumstance finding is valid and precludes any further challenge to that finding.

Applying the *Banks* and *Clark* factors, we conclude that on this record the jury could readily have found beyond a reasonable doubt that Price was a major participant in the felony murder and acted with reckless indifference to human life within the meaning of *Banks* and *Clark*. We begin with whether Price was a major participant. Price's role in planning the criminal enterprise was substantial. As we said in *Price I*, "[s]he participated in the crime from beginning to end, including driving to San Francisco, picking [the victim] up, taking (and keeping) his iPhone, returning to Pittsburg with him inebriated and passed out in the backseat of the car, stopping at Fells's house to get Fells's gun, taking the gun and Merrill to the park, participating in a further effort to rob him there and, after he was shot, leaving him in the park alone to die." (*Price I, supra,* 8 Cal.App.5th at pp. 453-454.)

---

was the actual killer, an aider and abettor of the murder acting with intent to kill or a major participant acting with reckless indifference to human life.

36

While the evidence of planning is circumstantial, Price's role as the primary planner and decisionmaker in the crime was established by the evidence of the following facts. On the night of the robbery and shooting, she learned Fells had acquired a gun. After picking up the inebriated Merrill, she took possession of his iPhone and used it in the car on the way back to Pittsburg to place more than 20 calls to Fells's and Edosa's phone. The jury could infer from those calls that she was already planning to pick up Fells and take her gun while she and Brown were in the car driving back across the bridge with Merrill in tow. The inference is bolstered by the fact that she did just that. She and Brown, with Merrill passed out in the car, returned to Fells and Edosa's house where she entered the house, asked why Fells and Edosa had not picked up their phone, went to the room where Fells was sleeping, convinced Fells to accompany her on a "ride," retrieved Fells's loaded gun from the drawer in the bedroom, put it in her jacket and took it along with her to the dimly lit nearby park. It became clear to Fells at some point after they arrived at the park that a robbery was afoot. Price and Brown intended to rob Merrill. Price participated with Brown in that effort. Assuming Price did not herself shoot Merrill, she gave the loaded gun to Brown to do so. After the shooting, Price kept the phone and Brown took Merrill's wallet.

According to Edosa's testimony and the texts between Price and Fells after the crime, Fells was upset by the shooting and thought it had been unnecessary. Price texted Fells stating, "it need it 2 b did," she had done this "shit" before and knew "wut I was doin." When Fells texted Price that she "need to start thinkn b4 u do stupid shit," Price texted that she "was thinking" and if she hadn't been, Fells would be "in jail rite now or dead." In

the kite intended for Brown, Price outlined the story she and Brown should tell to avoid a murder conviction.

All of this evidence suggests Price was the captain of the entire criminal enterprise. To be sure, it appears to have been a crime of opportunity facilitated by Merrill's unfortunate decision to get into the car. And it was not the kind of complex crime that would require a great deal of planning. But the evidence indicates that after Merrill got into the car a plan was made and that Price was the author of that plan.

This evidence also makes plain that whether or not she shot Merrill, Price supplied the gun to be used in the robbery. As we have said, Price retrieved Fells's gun and brought it with her to the park. After the group arrived at the park, Brown took Merrill's wallet, saying "I got it," but Price insisted, "He got more," and, according to Fells, pointed the gun at Merrill's chest. Whether it was Price who ultimately pointed the gun at Merrill and pulled the trigger or Brown who did one or both of those things does not matter. The fact that Price returned to Fells's house to obtain the gun, brought it to the scene and either used it or gave it to Brown to use during the robbery (or both) objectively supports the inference that she was a major participant in the felony murder. So do Fells's text messages to her and hers to Fells shortly after the incident in which Fells blamed her for the shooting and she responded that she had done similar things before and knew what she was doing and that it needed to be done.

Further, the evidence strongly indicates that Price acted with reckless indifference to human life. As the court observed in *Clark*, *supra*, 63 Cal.4th at pp. 614-615, the requirements of being a major participant and having reckless indifference to human life are interrelated and " 'significantly overlap . . . , for the greater the defendant's participation in the felony

murder, the more likely that he acted with reckless indifference to human life.' " (*Ibid.*, quoting *Tison, supra*, 481 U.S. at p. 153.)  According to *Clark*, the United States Supreme Court's "view of 'reckless indifference' " is "that it encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions."  (*Clark*, at p. 617.)  Citing the Model Penal Code, the court in *Clark* observed that reckless indifference "encompasses both subjective and objective elements."  (*Clark*, at p. 617.)  "The subjective element is the defendant's conscious disregard of risks known to him or her."  The objective component is measured by "what 'a law-abiding person would observe in the actor's situation,' " and whether the defendant's disregard of the risk " 'involved a gross deviation from the standard of conduct that a law-abiding person in the actor's situation would observe.' "  (*Ibid.*)  The fact that a robbery involves gain is not enough; nor is the mere awareness that one's confederates are armed.  (*Id.* at p. 618.)

Knowledge of weapons and use and number of weapons is the first factor identified in *Clark* as bearing on reckless indifference.  (*Clark, supra*, 63 Cal.4th at p. 618.)  Here, there was a single gun at the scene of Merrill's killing and  it was supplied by Price, who retrieved it from Fells's drawer and brought it to the scene.  Further, Price was in possession of the gun when they arrived, and the evidence supported an inference that, if Brown was the killer, Price handed Brown the gun at the scene.  There was evidence that Price had owned multiple guns (one having recently been confiscated by police), had shot a revolver and was familiar with guns and had been shown Fells's gun earlier that night.  There was also evidence that the gun was loaded.  The jury reasonably could infer from her experience with guns that Price knew Fells's gun was loaded when she picked it up and brought it with

her to the scene of the intended robbery. Further, to the extent the shooting was precipitated by resistance on Merrill's part,[21] Price either knew or should have known of the potential that a strapping young man like Merrill,[22] with a gun pointed at him, would attempt to defend himself, especially when he was extremely intoxicated and unable to appreciate the danger to himself, and that, if he resisted, she or one of her confederates would use the gun to kill him. These circumstances support a finding that Price was subjectively aware of and indifferent to the risk of death posed by her participation in the robbery and murder.

Physical presence at the scene and opportunity to prevent the crime or aid the victim is the second factor identified in *Clark* for reckless indifference. "Proximity to the murder and the events leading up to it may be particularly significant where . . . the murder is a culmination or a foreseeable result of several intermediate steps, or where the participant who personally commits the murder exhibits behavior tending to suggest a willingness to use lethal force." (*Clark, supra*, 63 Cal.4th at p. 619.) "In such cases, 'the defendant's presence allows him to observe his cohorts so that it is fair to conclude that he shared in their actions and mental state. . . . [Moreover,] the defendant's presence gives him an opportunity to act as a restraining influence on murderous cohorts. If the defendant fails to act as a restraining influence, then the defendant is arguably more at fault for the resulting murders.' " (*Ibid*.) The high court in *Tison* and other appellate courts "have considered

---

[21] Fells testified that Price pointed the gun at Merrill's chest but that, after Price did so and before the shooting, she saw Price on the ground and could not see the gun. Fells did not know whether Price had been pushed or tripped or slipped. Merrill was not on top of Price when she was on the ground. However, Fells heard two shots and saw a flash.

[22] Merrill was six feet two inches tall and weighed 185 pounds.

relevant a defendant's failure to provide aid while present at the scene." (*Ibid.*)

Price was present at the scene of Merrill's killing in the park, which was the culmination of several intermediate steps that we have already spelled out. She brought the loaded gun with her to the poorly lit park, where it became clear she and Brown intended to further rob Merrill of his wallet and any other items of value he may have had. Far from attempting to restrain Brown, Price (assuming she was not herself the shooter) gave Brown the gun while or after Price tried to find other items of value to take from Merrill. Further, once Merrill had been shot and even though he did not immediately die, neither Price nor her confederates made any effort to render him aid. Instead, they quickly got in the car and hurried off, neighbors nearby hearing the screech of their wheels.

The third *Clark* factor for reckless indifference is the duration of the felony. (*Clark*, *supra*, 63 Cal.4th at p. 620.) "Where a victim is held at gunpoint, kidnapped, or otherwise restrained in the presence of perpetrators for prolonged periods, 'there is a greater window of opportunity for violence . . . .'" (*Ibid.*) Here, while the times at which different events occurred varied with the testimony, the most reliable evidence indicated that Brown and Price crossed the Bay Bridge heading to San Francisco at 1:21 a.m. and that the shots that killed Merrill were heard by nearby residents close to 3:00 a.m. Thus, it appears Merrill was in the car with Price and Brown for one to two hours between the time they picked him up in San Francisco and, after stopping at Fells's house, took him to the park, robbed and killed him. He was passed out when they left Fells's house and had a blood alcohol level of .24 at the time of his death, indicating he was in a state of high intoxication throughout, and there is no indication he consented to

41

being taken out of San Francisco. This period of time, coupled with Merrill's intoxication, in fact provided a greater window of opportunity for violence because it enabled Price to obtain Fells's gun and to take Merrill to a dimly lit park where they could rob him without being seen.

The fourth *Clark* factor for reckless indifference is a defendant's knowledge of a cohort's likelihood of killing. (*Clark*, *supra*, 63 Cal.4th at p. 621.) There was no evidence that Brown or Fells had previously used guns in a robbery or otherwise, or that Price was aware of past conduct on their part that heightened the risk of a killing here. Thus, the fourth *Clark* factor does not weigh in favor of a finding of reckless indifference. Regardless, this factor is less significant where, as here, the defendant intentionally supplied a loaded gun to her confederate while the robbery attempts were ongoing. Further, other evidence indicates that even if Price was not intent on Merrill being killed, she was aware of a high risk that killing him would, in her view, be necessary. Merrill was not only extremely drunk, but he was a tall 22-year-old man. The likelihood that he would resist efforts by two women to rob him had to have been apparent, and Price's anticipation of this is evinced by her stopping to pick up Fells and bring Fells's gun to the scene. As she texted Fells later, she had done this before and knew what she was doing, and she decided it was necessary to shoot Merrill.

The fifth *Clark* factor for reckless indifference concerns a defendant's efforts to minimize the risk of violence during the felony. (*Clark*, *supra*, 63 Cal.4th at pp. 621-622.) That factor also weighs in favor of finding reckless indifference here. There is no evidence that Price took any steps to minimize the risk of violence. To the contrary, her acts of bringing a loaded gun to the scene of a robbery and handing it to a cohort while they were in the process of robbing the victim significantly increased the risk.

In short, the evidence here, evaluated in the context of the *Clark* and *Banks* factors, supports a finding that Price acted with reckless indifference to the grave risk her acts posed to Merrill's life.  Contrary to Price's arguments, this case is not akin to one in which a getaway driver or other person involved in a limited way in an armed robbery has mere knowledge that his confederates would be armed.  This is a case in which the individual who initiated the armed robbery actively acquired the gun, knew it was loaded, brought it to the scene, participated in the robbery, pointed the gun at the victim, and—if she did not shoot—gave the gun to the shooter, in effect encouraging the shooting.  As her after-the-crime texts to Fells indicate, Price was more than willing to shoot, or aid Brown in shooting, Merrill; she was willing to kill Merrill if she deemed it necessary to accomplish the robbery and avoid detection, and she was completely indifferent to the grave risk she created that he would end up losing his life.  In short, her words and acts reflected a "willingness to kill (or to assist another in killing) to achieve a distinct aim, even if [she did] not specifically desire that death as the outcome of [her] actions."  (*Clark*, *supra*, 63 Cal.4th at p. 617.)

While Price is not as high on the culpability spectrum as the Tison brothers, she is well beyond Enmund, Banks and Clark.  We conclude the jury's special circumstance finding is supported by substantial evidence meeting the culpability standard of *Banks* and *Clark*.  We also conclude that the finding bars Price's petition for resentencing under section 1170.95 because she could be and was convicted of first degree murder under a theory that remains valid after Senate Bill No. 1437 (2017-2018 Reg. Sess.), namely

43

felony murder with the elements set forth in section 189 as amended, which are the same as the special circumstances found by the jury.[23]

## DISPOSITION

The decision of the Superior Court is affirmed.

---

[23] Price points out that some of the murder instructions given in the case permitted the jury to find her guilty of murder under a natural and probable consequences theory, which is no longer permitted by the murder statute. Price fails to explain how the instructions on these now invalid theories could entitle her to resentencing. Since the jury necessarily found all of the essential elements for first degree felony murder under the current murder statute when it found the felony-murder special circumstance was true, any error in instructions on other theories would not entitle her to relief. (See *Simmons, supra,* 65 Cal.App.5th at p. 747 ["by finding the special circumstance true, the jury made the requisite findings necessary to sustain a felony-murder conviction under the amended law," "rendering him ineligible for resentencing as matter of law"], rev. gr.; cf. *Gonzalez, supra,* 5 Cal.5th at p. 200 [error in failing to give instructions on lesser included offenses and related defenses was harmless where jury made special circumstance finding, which "necessarily demonstrates the jury's determination that the defendant committed felony murder rather than a lesser form of homicide"]; *People v. Lewis, supra,* 25 Cal.4th at p. 646 ["Error in failing to instruct the jury on a lesser included offense is harmless when the jury necessarily decides the factual questions posed by the omitted instructions adversely to defendant under other properly given instructions"].)

_____

STEWART, J.

We concur.

_____

KLINE, P.J.

_____

RICHMAN, J.

*People v. Price* (A159439)

45

Trial Court: Contra Costa County Superior Court

Trial Judge:          Hon. Charles B. Burch

Counsel:

Spolin Law, Aaron Spolin for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Donna M. Provenzano, David H. Rose, Deputy Attorneys General, for Plaintiff and Respondent.